RECEIVED
IN LAKE CHARLES, LA.

AUG 3 1 2016

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BOISE PACKAGING & NEWSPRINT, L.L.C. | * | CIVIL ACTION NO. 2:15-cv-2498 |
| | * | |
| v. | * | JUDGE MINALDI |
| | * | |
| MUELLER FIELD OPERATIONS, INC., RSUI INDEMNITY COMPANY, HUDSON SPECIALTY INSURANCE COMPANY, AND NAVIGATORS SPECIALTY INSURANCE COMPANY | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is Cross-Claimant and Counterclaim Defendant Hudson Specialty Insurance Company's ("Hudson") Motion to Dismiss and Motion for Judgment on the Pleadings (Rec. Doc. 22), Cross-Claim Defendant and Counterclaim Plaintiff Mueller Field Operations, Inc.'s ("Mueller"), Opposition to the Motion (Rec. Doc. 26), Hudson's Reply (Rec. Doc. 30), and Mueller's Surreply (Rec. Doc. 33). For the following reasons, Hudson's motions will be **GRANTED**.

## FACTS & PROCEDURAL HISTORY

Boise Packaging & Newsprint, L.L.C. ("Boise Packaging"), entered into a Fixed Sum Construction Agreement with Mueller on August 29, 2013, in connection with the design, fabrication, construction and erection of a high density OCC pulp storage tank at Boise Packaging's facility in DeRidder, Louisiana.[1] During a hydrotest on September 14, 2014, the tank collapsed at the transition cone to the bottom shell section.[2] An investigation into the collapse revealed that the thicknesses and/or sizes for the transition cone, bottom shell, and compression

---

[1] Pet. (Rec. Doc. 1) ¶ 2.
[2] *Id.* at ¶ 3.

1

bars were inadequate for the stresses associated with the loads, indicating that the tank was inadequate or under-designed.[3] Boise Packaging sued Mueller and its insurers (including Hudson, RSUI Indemnity Company, Sentry Insurance and Navigators Specialty Insurance Company) for the resulting damages.[4]

Hudson had issued a Prototype® Manufacturing Errors & Omissions Liability Policy No. EMP212161 ("the Policy") to Mueller with a policy period of October 1, 2013, through October 1, 2014.[5] The Policy provided coverage for claim expenses and damages because of a covered claim caused by a "glitch"[6] in Mueller's manufacturing services between October 1, 2013, and October 1, 2014.[7] The Policy also included an exclusion clause ("Exclusion") which precluded coverage to any claim expenses or damages "arising out of or in any way related to any actual or alleged . . . physical damage to, loss or destruction of tangible property . . . ."[8]

On October 12, 2014, Hudson filed its cross-claim against Mueller seeking a declaratory judgment that Mueller was not entitled to coverage under the Policy for any losses or claims arising from the Boise Packaging incident. Mueller filed its counterclaim against Hudson on December 21, 2015, seeking declaratory relief and alleging breach of contract and breach of a duty of good faith and fair dealing.[9] On January 26, 2016, Boise Packaging's voluntarily dismissed all of its claims against the defendants, leaving only the claims between Hudson and Mueller.[10] Hudson's 12(c) Motion for Judgment on the Pleadings seeks a declaratory judgment declaring that under the

---

[3] *Id.* at ¶ 4.
[4] *Id.* at ¶ 1.
[5] Ex. 1, Policy (Rec. Doc. 22-2), at HUD001, HUD004.
[6] "Glitch" encompasses the following categories: (1) Content and Personal Injury, such as defamation, invasion of privacy, and copyright/trademark infringement; (2) Errors and Omissions, such as errors, omissions, or negligent acts, and breach of representations or warranties as to the fitness, quality, performance and use of manufacturing services; and (3) Security. *Id.* at HUD004.
[7] *Id.* at HUD001, HUD004.
[8] *Id.* at HUD006-07.
[9] Countercl. against Hudson (Rec. Doc. 19) ¶¶ 38-59.
[10] *See* Order of Partial Dismissal (Rec. Doc. 21).

Exclusion it owes no coverage or defense obligations to Mueller for any liability incurred as a result of the acts or omissions alleged in Boise Packaging's complaint.[11] The 12(b)(6) Motion to Dismiss further seeks to dismiss all claims asserted by Mueller against Hudson.[12]

## LAW & ANALYSIS

A Rule 12(c) motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2008) (citation omitted). Motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seek the dismissal of an action for failure to state a claim and challenge the sufficiency of a plaintiff's allegations. FED. R. CIV. P. 12(b)(6). In the Fifth Circuit, Rule 12(b)(6) motions to dismiss are generally viewed with disfavor and should rarely be granted. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quoting *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. When deciding a 12(b)(6) motion to dismiss, the court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights,*

---

[11] Mot. to Dismiss (Rec. Doc. 22); *see also* Cross-cl. against Mueller (Rec. Doc. 3), at 29 (First Claim for Declaratory Relief).
[12] Mot. to Dismiss (Rec. Doc. 22).

*Ltd.*, 551 U.S. 308, 322 (2007); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ("[W]e note approvingly, however, that various other circuits have specifically allowed that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'").

CHOICE OF LAW

A federal court sitting in diversity applies the law of the forum state to determine which state's law applies. *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ( citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 359 n.7 (1941)). For insurance policies, Louisiana courts generally choose the law of the state in which the policy was issued. *Am. Elec. Power Co. Inc. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 285 n.2 (5th Cir. 2009) (citing *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999)). Nonetheless, if the laws of the states do not conflict, then no choice-of-law analysis is necessary and the law of the forum state can be applied.[13] *Mumblow*, 401 F.3d at 620. In this case, both parties agree that the Policy was issued in Missouri.[14] Hudson argues that Missouri and Louisiana law are the same in all material respects. However, Missouri law and Louisiana law differ with respect to the analysis of insurance policy provisions. *Compare Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005) (applying Louisiana law) (employing the "eight-corners" rule to determine whether the duty to defend is triggered) *with Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005) (applying Missouri law) (finding that even when pleadings do not show coverage there is a duty to defend where known or reasonably ascertainable facts become available that show

---

[13] Mot. to Dismiss (Rec. Doc. 22), at 12.
[14] *See* Mot. to Dismiss (Rec. Doc. 22), at 12 (Hudson contends "if a choice of law analysis was needed, the Court should apply Missouri law in determining the coverage issue"); Opp'n. to Mot. to Dismiss (Rec. Doc. 26), at 7 (Mueller states that "Missouri law should apply to the substantive coverage issues in this matter").

coverage) (emphasis in original). Although the cases Hudson cites when comparing Louisiana and Missouri law ultimately reach the same conclusion, the analysis, interpretation, and application cannot be said to be exactly the same. Because of the differences between the two states' laws, the court will apply Missouri law.

### PHYSICAL DAMAGE TO PROPERTY EXCLUSION

Under Missouri law, when interpreting an insurance policy the court applies "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance" and resolves ambiguities in favor of the insured. *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (citation omitted). Whether a contract is ambiguous is a question of law. *Bar Plan Mut. Ins. Co. v. Chesterfield Management Associates*, 407 S.W.3d 621, 628 (Mo. Ct. App. 2013). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Seeck*, 212 S.W.3d at 132 (citation omitted). "Language is ambiguous if it is reasonably open to different constructions." *Id.* (citation omitted). Absent an ambiguity, an insurance policy must be enforced according to its terms. *Rodriguez v. General Acc. Ins. Co.*, 808 S.W.2d 379, 382 (Mo. 1991).

The drafter bears the burden of showing that an exclusion applies. *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. 2010). Language that limits coverage "must be construed so as to give the insured the protection which he reasonably had a right to expect; and to that end any doubts, ambiguities and uncertainties arising out of the language used in the policy must be resolved in his favor." *Aetna Cas. & Sur. Co. v. Hass*, 422 S.W.2d 316, 321 (Mo. 1968). An insurer's duty to defend is broader than the duty to indemnify. *Allen v. Continental W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014). Nonetheless, the duty to defend arises only when there is a possibility of coverage at the outset of the case. *Id.*

At issue in this case is whether the Exclusion precludes coverage of the costs Mueller incurred to remove, redesign, and replace the tank. Mueller argues that these costs are covered under the Policy because "glitch" encompasses "errors, omissions or negligent acts" and "breach of representations or warranties as to the fitness, quality, performance and use of manufacturing services," and that the need to remove, redesign, and replace the tank stemmed from alleged errors and omissions in its manufacturing services and breach of warranty.[15] Hudson contends that any such damages[16] are precluded because they are subject to the Exclusion, which provides,

> We will not pay claim expenses and/or damages or defend any of you for any glitch or claim arising out of or in any way related to any actual or alleged: ... physical damage to, loss or destruction of tangible property including any resulting loss of use. However, this exclusion does not apply to data, information or software if the tangible property on which it resides is not physically damaged, lost, or destroyed.[17]

Under Missouri insurance law, "'arising out' of has been interpreted 'to be a very broad, general and comprehensive phrase' meaning 'originating from' or 'having its origins in' or 'growing out of' or 'flowing from.'" *Capitol Indem. Corp. v. 1405 Associates Inc.*, 340 F.3d 547, 550 (8th Cir. 2003) (citations omitted)). The applicable causation standard when the phrase is used is not the strict "direct and proximate cause" standard applicable in general tort law. *Id.* "Instead, 'arising out of' may be established by a simple causal relationship . . . between the accident or injury and the activity of the insured.'" *Id.*

---

[15] Ex. 1, Policy (Rec. Doc 22-2), at HUD004.
[16] In the alternative, Hudson argues that the damages Mueller seeks are not included in the Policy's definition of "damages." Mueller seeks damages from Hudson "in excess of $2,000,000 for all claims expenses and damages incurred by MFO as a result of the Collapse and the Boise Claim, together with the costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees and costs, pre- and post-judgment interest, other consequential damages, [and] punitive damages." Countercl. against Hudson (Rec. Doc. 19), at 16. According to Mueller, the estimated damages are primarily derived from the removal, redesign and replacement of the failed tank due to the alleged manufacturing errors. Opp'n to Mot. to Dismiss (Rec. Doc. 26), at 6. Hudson notes that the definition of damages does not include any type of expense "to recall, repair, fix, correct, complete, reperform or upgrade" manufacturing services. *Id.* at HUD011-12.
[17] *Id.* at HUD006-07.

Even if the tank was negligently designed, the unambiguous language of the Exclusion nonetheless excludes coverage. Boise Packaging's claims against Mueller and its insurers resulted from physical damage that the tank, which is tangible property, incurred during a hydrotest. The Exclusion clearly bars coverage arising from "physical damage to, loss or destruction of tangible property." Just because the physical damage to the tank may have been caused by a deficient design or manufacturing process does not change the fact that the tank was physically damaged by the hydrotest. Mueller's argument that there is coverage because the costs it incurred can be traced back to a negligent act or omission entirely ignores the existence of the Exclusion. Additionally, the broader interpretation that Missouri courts grant to "arise out of" means that the Exclusion applies to all of the costs because the removal, redesign, and replacement of the tank are all causally connected to the physical damage the defective tank suffered.

Moreover, Hudson had no duty to defend Mueller regarding the Boise Packaging claims. The explicit language of the Policy states that for *covered* claims Hudson "[has] the right and duty to defend [Mueller]."[18] As stated above, Missouri courts do not require an insurer to defend when the claim, on its face, appears as if it would not be covered. From the onset, it was facially apparent that all of the claims arose from physical damage to the tank, which is not covered because of the Exclusion. Therefore, Hudson's 12(b)(6) Motion to Dismiss will be **GRANTED** and its 12(c) Motion for Judgment on the Pleadings will be **GRANTED**.

Lake Charles, Louisiana, this 31 day of August, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[18] *Id.* at HUD006.